IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STANLEY T. SMITH, | ) | CASE NO. 1:08CV0845 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE 0LIVER |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| JULIUS WILSON Warden, | ) | |
| | ) | |
| Respondent. | ) | REPORT AND RECOMMENDATION |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before the court is Stanley T. Smith's ("Smith") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on April 2, 2008.  Smith is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Smith*, Case No. 2003-CR150 (Ashtabula County 2003).  For the reasons set forth below, the magistrate judge recommends that the petition be dismissed.

I.  Procedural History

The state appellate court reviewing Smith's conviction and first sentencing found the following facts to be relevant to his case:

{¶ 2} On May 9, 2003, appellant was indicted by the Ashtabula County Grand Jury on seven counts of drug trafficking resulting from controlled drug buys made by the Trumbull, Ashtabula, and Geauga Law Enforcement Task Force ("T.A.G.") from appellant. The drug buys were set up by T.A.G., and took place at appellant's residence in Jefferson, Ohio.  The buys occurred on September 18, 2002; September 19, 2002; October 3, 2002; October 10, 2002; and November 13, 2002.

Appellant was charged with trafficking in drugs on September 18, 2002, to-wit: 1.44 grams of methamphetamine, a schedule II controlled substance, in violation of R.C. 2925.03, a felony of the fourth degree (Count One); trafficking in drugs on September 18, 2002, to-wit: 10.6 grams of hydrocodone, a schedule II controlled substance, in violation of R.C. 2925.03, a felony of the fourth degree (Count Two); trafficking in drugs on September 19, 2002, to-wit: 7.62 grams of hydrocodone, a schedule II controlled substance, in violation of R.C. 2925.03, a felony of the fourth degree (Count Three); trafficking in drugs on September 19, 2002, to-wit: 17.7 grams of marijuana, a schedule I controlled substance, in violation of R.C. 2925.03, a felony of the fourth degree (Count Four); trafficking in drugs on October 3, 2002, to-wit: 1.40 grams of methamphetamine, a schedule II controlled substance, in violation of R.C. 2925.03, a felony of the fourth degree (Count Five); trafficking in drugs on October 10, 2002, to-wit: 2.28 grams of methamphetamine, a schedule II controlled substance, in violation of R.C. 2925.03, a felony of the fourth degree (Count Six); and trafficking in drugs, to-wit: 3.05 grams of methamphetamine, a schedule II controlled substance, in violation of R.C. 2925.03, a felony of the third degree (Count Seven).  Prior to the beginning of trial, the state dismissed Counts Three and Four.

{¶ 3} At trial, Detective Scott Daniels, who was employed by the Ashtabula County Sheriff's Office and assigned to T.A.G., testified that he was the agent in charge of setting up the controlled buys involved in this case between the confidential informant and appellant.  After each controlled buy, the methamphetamine and/or hydrocodone (vicodin) pills that were purchased by the informant from appellant were taken into custody by Daniels.

{¶ 4} With respect to Count One and Count Two, on September 18, 2002, the confidential informant arrived at appellant's residence, and the two discussed the informant's purchase of methamphetamine.  The informant paid appellant $180 for that drug.  The informant also purchased twenty-five hydrocodone (vicodin) pills for $120.

{¶ 5} With respect to Count Five, on October 3, 2002, the informant purchased methamphetamine from appellant at his residence for $180.  As to Count Six, on October 10, 2002, the informant purchased methamphetamine from appellant at his residence for $280.

{¶ 6} With respect to Count Seven, on November 13, 2002, the informant purchased methamphetamine from appellant at his residence for $180.

{¶ 7} The jury returned a guilty verdict on Counts One, Two, Five, Six, and Seven.  Appellant was sentenced to one year prison terms on each of Counts One, Two, Five, and Six and a four year prison term on Count Seven.  The sentences were to be served concurrently, but consecutively to sentences imposed by the trial court in an unrelated criminal case, Case No.2004-CR-121.  In that other case appellant

2

had been sentenced to six years in prison on various drug-related charges, each of which was ordered to be served concurrently.

{¶ 8} Following his conviction in this case, appellant appealed in *State v. Smith,* 11th Dist. No.2004-A-0089, 200-Ohio-5187, ("*Smith I*"), challenging various matters[1] including his sentence.  In that case this court affirmed the guilty finding, but reversed the sentencing and remanded the case for resentencing to the trial court pursuant to *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856.  This court held the sentence in *Smith I* to be void because the trial court made judicial findings of fact before imposing a consecutive sentence.

{¶ 9} Appellant was resentenced by the trial court on November 1, 2006.  At that hearing the trial court stated that in *Foster* the Supreme Court held that the findings of fact required by S.B. 2 were unconstitutional, and that the trial court would now consider the findings made during the original sentencing as guidelines in the resentencing.

{¶ 10} The court then asked appellant's counsel if he had any comments, and he did not object to the court's recitation.  Counsel stated that what had formerly been required as findings of fact were now a "suggested guideline" that the court is "advised," but not required, to follow.  Counsel asked the court to review R.C.

---

[1]  Smith asserted three assignments of error:

FIRST ASSIGNMENT OF ERROR

THE ASHTABULA COURT OF COMMON PLEAS ERRED TO THE PREJUDICE OF APPELLANT WHEN IT OVERRULED APPELLANT'S MOTION TO DISMISS FOR FAILURE TO BRING THE APPELLANT TO TRIAL WITHIN THE TIME LIMITS PROVIDED IN OHIO REVISED CODE SECTION 2945.71.

SECOND ASSIGNMENT OF ERROR

THE APPELLANT DID NOT RECEIVE THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED TO HIM BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLEI, SECTION 10 OF THE OHIO CONSTITUTION.

THIRD ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT SENTENCED HIM TO A PRISON SENTENCE CONSECUTIVE TO A SENTENCE IMPOSED ON HIM IN ANOTHER CASE.

2929.14(E)(4), and stated that he did not believe consecutive sentences were necessary to protect the public; that consecutive sentences were disproportionate to the seriousness of appellant's conduct; and that the harm appellant caused was not so great that one prison term would not suffice.

{¶ 11} The court acknowledged counsel's request, and stated that it had reviewed R.C. 2929.14(A), (B), (C), and (E).  The court considered the purposes of felony sentencing under R.C. 2929.11. It noted appellant was not amenable to any available community control sanction, and that a term of imprisonment was consistent with the purposes of sentencing under R.C. 2929.11. Further, the court stated it had balanced the recidivism and seriousness factors of R.C. 2929.12. It stated that recidivism was likely, and that the more serious factors outweighed the less serious factors.

{¶ 12} The court imposed the same sentence it had imposed during the original sentence: one year terms on each of Counts One, Two, Five, and Six and a four year term on Count Seven.

*State v. Smith*, 2007 WL 2696798, at *1-*3 (Ohio App. Sept. 14, 2007).

Smith timely appealed his sentence to the state appellate court.  In his brief in support of his appeal, Smith asserted the following assignment of error:

I.     The Court erred in imposing Consecutive sentences.

    A.     The trial court improperly relied upon facts not proven to a jury beyond a reasonable doubt or admitted by the Defendant as a basis for the imposition of consecutive sentences.

    B.     It was a violation of the prohibition against ex post facto law for the court to impose consecutive sentences.

(Capitalization in the original).  On September 17, 2007, the state appellate court found Smith's arguments to be without merit and affirmed the judgment of the sentencing court.

Smith filed a timely notice of appeal in the Supreme Court of Ohio.  In his memorandum in support of jurisdiction, Smith presented three propositions of law:

<u>PROPOSITION OF LAW No. I</u>:

WHEN A TRIAL COURT CONSIDERS FACTS NOT SUBMITTED TO A JURY OR PROVEN BEYOND A REASONABLE DOUBT AS A BASIS FOR IMPOSING

4

CONSECUTIVE SENTENCES, THAT SENTENCE VIOLATES THE RIGHT TO TRIAL BY JURY AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.

PROPOSITION OF LAW No. II:

WHEN APPELLATE COUNSEL FAILS TO RAISE APPELLANT'S MOST VIABLE, SIGNIFICANT AND OBVIOUS ISSUE ON DIRECT APPEAL, APPELLANT IS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUSNEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENT [sic] TO THE UNITED STATES CONSTITUTION.

PROPOSITION OF LAW No. III:

WHEN A SENTENCING COURT IMPOSES A SENTENCE ON THE BASIS OF THE RETROACTIVE APPLICATION OF CASE LAW AND THAT SENTENCE INCREASES THE PUNISHMENT FROM THAT WHICH COULD BE IMPOSED UNDER THE LAW IN EFFECT AT THE TIME OF THE CRIMINAL ACTIVITY, THE SENTENCE VIOLATES THE EX-POST-FACTO CLAUSE AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

(Punctuation altered from the original).  On February 8, 2008, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On April 2, 2008, Smith filed the instant petition, asserting the following two grounds for relief:

Ground One:  [C]onviction obtained in violation for the Federal Constitution's Sixth and Fourteenth Amendment where 'penalty phase errors,' as contemplated in and under: Rich v. Calderon, No. CIV S 89 0823 EJG GGH P (E.D. Cal. August 2, 1996) ('holding that:  "not guilty of the offense" as used in the ADEPA includes penalty phase errors') therein reducing the proceedings to a mere nullity and void as a matter of law.  see: State v. Foster, 109 Ohio St,. 3d 1, citing: Blakely v. Washington (2004), 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403.  see also: State v. Bezak, 868 N.E. 2d 961 (Ohio 2007); and State v. Sarkozy, ___ N.E. 2d ___, 117 Ohio St. 3d 86, 2008 WL 417690 (Ohio).

Ground two:  [C]onviction obtained in violation of the Federal Constitution's prohibition against ex post facto laws.  see: Marks v. United States (1977), 430 U.S.

5

188, 191-192, 97 S. Ct. 990, 992-993, 51 L. Ed. 2d 260, 265, accord: <u>State v. Webb</u> (1994), 70 Ohio St. 3d 325.  <u>see</u> <u>also</u>: <u>Weaver v. Graham</u>, 450 U.S. 24, 101 S. Ct. 960.

(Capitalization, punctuation, and errors in the original).  Respondent filed a Return of Writ on August 14, 2008.  Doc. No. 7.  Petitioner filed a response to the return of writ on October 9, 2008.  Doc. No. 13.  Thus, the petition is ready for decision.

II

A.  *Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).

Smith was convicted in the court of common pleas in Ashtabula County.  At the time he filed his writ of habeas corpus in the Northern District of Ohio, he was in prison pursuant to that conviction.  His place of incarceration is the Richland Correctional Institution in Mansfield, Ohio.  This court has jurisdiction over Smith's petition.

B.  *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Smith's claims involve legal issues which can be

6

independently resolved without additional factual inquiry.

C.    *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Smith has no remaining state remedies for his claims.  Because Smith has no remaining state remedies, his claims are exhausted.

D.    *Procedural default*

Respondent argues that petitioner has procedurally defaulted his first claim for

7

relief.[2]  Reasons of federalism and comity generally bar federal habeas corpus review of

"contentions of federal law . . .  not resolved on the merits in the state proceeding due to

respondent's failure to raise them there as required by state procedure."  *Wainwright v.*

*Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and
> adequate state procedural rule, federal habeas review of the claims is barred unless
> the prisoner can demonstrate cause for the default and actual prejudice as a result
> of the alleged violation of federal law, or demonstrate that failure to consider the
> claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the state argues that a petitioner has procedurally defaulted, the court must

conduct a four-step analysis to determine whether the petitioner has indeed defaulted and,

if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable
> to the petitioner's claim and that the petitioner failed to comply with the rule. . . .
> Second, the court must decide whether the state courts actually enforced the state
> procedural sanction.  . . . Third, the court must decide whether the state procedural
> forfeiture is an  "adequate and independent" state ground on which the state can
> rely to foreclose review of a federal constitutional claim. . . . This question generally
> will involve an examination of the legitimate state interests behind the procedural
> rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the
> court determines that a state procedural rule was not complied with and that the rule
> was an adequate and independent state ground, then the petitioner must
> demonstrate . . . that there was "cause" for him to not follow the procedural rule and
> that he was actually prejudiced by the alleged constitutional error.

---

[2]  As respondent notes, it is difficult to determine exactly what Smith's first claim for
relief is.  Respondent assumes that the claim is the same as Smith's first assignment of
error on appeal after his re-sentencing, *viz.*, that the trial court improperly used facts not
found by the jury in sentencing Smith to consecutive sentences. Respondent's assumption
is reasonable, but Smith also seems to be arguing that unconstitutional flaws in the
sentencing reduced his conviction to a nullity.  If that is his argument, it is gravely
erroneous.  None of the cases Smith cites stands for that proposition, nor does any case
in the court's knowledge stand for such a proposition.

8

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

In the instant case, respondent argues that Smith has defaulted his claim that the trial court erred in relying on facts not found by a jury in sentencing Smith to consecutive terms.  Smith failed to object contemporaneously at his sentencing hearing to his sentencing on this ground.  The state appellate court noted this failure on Smith's appeal of his resentencing and found that Smith's failure to object contemporaneously waived his right to raise the issue on appeal.  *Smith*, 2007 WL 2696798 at *4-*5.  "[I]n *Engle v. Isaac,* 456 U.S. 107, 124-29, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Supreme Court specifically found that default imposed for failure to object contemporaneously as required by Ohio's Rule 30 is an adequate and independent state ground to bar federal habeas review absent a showing of cause and prejudice."  *Scott v. Mitchell*, 209 F.3d 854, 867 (6th Cir. 2000).

Smith contends that ineffective assistance of trial counsel was the cause of his procedural default and further contends that he presented this issue to the state courts.  Smith's contentions are not well-taken.

Ineffective assistance of counsel may constitute cause for failing to present a claim properly to a state court.  *See Williams v. Anderson*, 460 F.3d 789, 800 (6th Cir. 2006).  Counsel has been ineffective if his or her conduct falls below an objective standard of reasonableness and if there is a reasonable probability that but counsel's ineffective performance the outcome of the proceedings would have been different.  *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984).  Ineffective assistance of counsel may only

9

serve as cause for a procedural default, however, if the ineffective assistance of counsel claim itself was not procedurally defaulted or unless cause and prejudice for such default exists. *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000).

Smith contends that he did present a claim of ineffective assistance of counsel to the state appellate court and to the Ohio Supreme Court. Although this is true, his claim of ineffective assistance of counsel in the appellate court, presented during his first direct appeal, had nothing to do with trial counsel's failure to object to the use of judicially-determined facts in sentencing Smith. Rather, the claim was primarily concerned with counsel's ineffectiveness for waiving Smith's right to a speedy trial. Even more important, this appeal addressed Smith's *first* sentencing, not the second sentencing pursuant to which he is currently incarcerated.[3] Smith has not presented to the state courts as a stand-alone claim his contention that trial counsel was ineffective for failing to object to the use of judicially-determined facts in sentencing Smith. Having failed to present this claim to the state courts, Smith may not use this claim as cause for his procedural default.

Moreover, even if Smith could use trial counsel's alleged ineffectiveness in failing to object to Smith's sentencing as cause for his default, he would be unable to establish that his counsel was, in fact, ineffective or that the alleged ineffectiveness prejudiced him. The standard for determining whether petitioner's counsel was ineffective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466

---

[3] During his second appeal, Smith argued in the Ohio Supreme Court that *appellate* counsel had been ineffective for failing to argue trial counsel's ineffectiveness in failing to object to Smith's sentencing.

U.S. 668, 686 (1984); *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).

A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one: "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167. Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision. *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167. The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167. A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Id.* at 690-91 (1984); *see also Groseclose*, 130

11

F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168. Further "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984). Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

Smith's claim that counsel was ineffective for failing to object to judicial factfinding during Smith's second sentencing is without merit. Giving a court full discretion to select any sentence within a range of sentences for whatever reason it deems appropriate, *even if the court engages in judicial fact-finding in reaching its sentencing determination*, does not violate the holding in *Blakely*. Justice Scalia made this clear in his majority opinion in

12

*Blakely*:

> [T]he Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence--and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10-year sentence--and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.

*Blakely*, 542 U.S. at 308-09.

The court sentencing Smith had full discretion to select any sentence it deemed appropriate within the relevant sentencing ranges and was entitled to engage in any fact-finding it thought necessary in reaching the appropriate sentence. This did not violate the holding in *Blakely* and did not violate Smith's constitutional rights. Consequently, even if counsel had objected to judicial factfinding in sentencing Smith, the objection would have been overruled as without merit.

Smith has defaulted his claim that his trial counsel was ineffective for failing to object to judicial factfinding during his sentencing. Moreover, even if this claim were not defaulted, there is no merit to this claim: Counsel was not ineffective for failing to so object, and Smith was not prejudiced by counsel's performance. For these reasons, Smith fails to show cause and prejudice for his default of his first ground for relief. Consequently, Smith's first ground for relief should be dismissed as procedurally defaulted.

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that

14

reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply.  *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence."  *Id.*  This court will consider Smith's remaining ground for relief under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

Smith's second ground for relief argues that sentencing him to consecutive sentences under the Ohio sentencing statute re-fashioned by *Foster* violates the *Ex Post Facto* clause of the United States Constitution.  Respondent denies that Smith's sentencing violated the *Ex Post Facto* clause.

Article I, § 10 of the United States Constitution provides that no state shall pass *ex post facto* laws. U.S. Const, Art. I, § 10.  The Constitution's bar against *ex post facto* laws, however, does not apply to courts:

> The *Ex Post Facto* Clause, by its own terms, does not apply to courts.  Extending the Clause to courts through the rubric of due process . . . would circumvent the clear constitutional text.  It also would evince too little regard for the important

15

institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other.

*Rogers v. Tennessee,* 532 U.S. 451, 460 (2001).

Although the *Ex Post Facto* Clause does not apply to courts, "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process." *Id.* at 456. In particular, the Supreme Court has found that court may not unexpectedly and indefensibly construe a criminal statute so as to criminalize conduct which had not been criminal prior to the court's new construction. *See Bouie v. City of Columbia*, 378 U.S. 347 (1964). The Supreme Court has explicitly declined to apply all the protections of the *Ex Post Facto* Clause to courts by way of the due process clause:

> To the extent petitioner argues that the Due Process Clause incorporates the specific prohibitions of the *Ex Post Facto* Clause . . . petitioner misreads *Bouie.* [N]owhere in the opinion did we go so far as to incorporate jot-for-jot the specific categories of [protection in the *Ex Post* Facto Clause] into due process limitations on the retroactive application of judicial decisions.
>
> Nor have any of our subsequent decisions addressing *Bouie*-type claims interpreted *Bouie* as extending so far. Those decisions instead have uniformly viewed *Bouie* as restricted to its traditional due process roots. In doing so, they have applied *Bouie*'s check on retroactive judicial decisionmaking not by reference to the *ex post facto* categories [of protection], but, rather, in accordance with the more basic and general principle of fair warning that *Bouie* so clearly articulated.
>
> Petitioner observes that the Due Process and *Ex Post Facto* Clauses safeguard common interests-in particular, the interests in fundamental fairness (through notice and fair warning) and the prevention of the arbitrary and vindictive use of the laws. While this is undoubtedly correct, petitioner is mistaken to suggest that these considerations compel extending the strictures of the *Ex Post Facto* Clause to the context of common law judging. . . . Moreover, "[g]iven the divergent pulls of flexibility and precedent in our case law system," incorporation of the [categories of protection in the *Ex Post* Facto Clause] into due process limitations on judicial decisionmaking would place an unworkable and unacceptable restraint on normal judicial processes and would be incompatible with the resolution of uncertainty that marks any evolving legal system.

*Id.* at 458-461 (citations omitted).

16

Until 2006, Ohio sentencing statutes required sentencing a defendant to concurrent terms of incarceration unless the sentencing court determined that certain factors mandated concurrent sentences. Those factors, described at Ohio Rev. Code § 2929.12, required judicial factifinding of the sort later found to be unconstitutional by *Blakely v. Washington*, 542 U.S. 296 (2004). In *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006), the Ohio Supreme Court found this portion of the Ohio sentencing statutes to be unconstitutional and severed it from the rest of the sentencing regime. As a consequence of *Foster's* judicial reconstruction of the Ohio sentencing statutes, the Ohio Supreme Court directed sentencing courts as follows:

> Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively.

*Foster*, 109 Ohio St. 3d at 30, 845 N.E.2d at 499.

In the present case, Smith argues that because the events specified in the indictment occurred several years before the decision in *Foster*, applying *Foster's* judcially-reconstructed sentencing statute in re-sentencing Smith violated his right to be free from *ex post facto* laws. Smith cites *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1963), in support of the proposition that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids." *See also Rogers v. Tennessee,* 532 U.S. 451, 459 (2001).

Smith's argument is not well-taken for three reasons. First, the judicial enlargement of a criminal statute in *Bouie* was very different from the alleged enlargement in *Foster*. In *Bouie*, a South Carolina statute prohibited entry onto land after the posting of notice

17

prohibiting such entry. Defendants were arrested pursuant to that statute during a lunch counter sit-in for civil rights when they were ordered to leave after being notified that they were trespassing if they remained. The defendants had not been given notice prohibiting their entry to the lunch counter prior to their entry. Upon appeal, the South Carolina supreme court re-interpreted the relevant statute to prohibit remaining on a property after notice was given as well as entry onto the property. The Supreme Court struck down the convictions and agreed with the appellants that South Carolina had punished them for conduct that was not criminal at the time they committed it, thus violating the requirement of the due process clause that a criminal statute give fair warning of the conduct which it prohibits. According to the Court, "If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect." *Bouie*, 378 U.S. at 354 (quoting Hall, GENERAL PRINCIPLES OF CRIMINAL LAW (2d ed. 1960), at 61).

*Foster* differs considerably from *Bouie*. *Foster* did not criminalize any conduct which had not been criminal prior to the decision. Nor did *Foster* increase the maximum penalty that could be handed down for a crime. Rather, *Foster* excised those portions of Ohio's sentencing statute that required judicial findings of fact before a court could sentence a defendant to more than a minimum sentence or to consecutive sentences. *Bouie* stands for the proposition that a court may not criminalize conduct after the conduct has occurred, not for the proposition that a court may not alter how a defendant is sentenced after the criminal conduct at issue has occurred.

Second, Smith's position is foreclosed in part by *Dobbert v. Florida*, 432 U.S. 282 (1977). Smith contends that Ohio may not sentence him pursuant to a statute that it

modified after Smith's criminal conduct because this fails to give him fair warning of his

potential punishment.  As the Eleventh Circuit first pointed out in *United States v. Duncan*,

400 F.3d 1297 (11th Cir. 2006), *Dobbert* contradicts this proposition:

> After Dobbert's murders, the Florida death penalty statutes were found
> unconstitutional under the principles of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct.
> 2726, 33 L.Ed.2d 346 (1972).  However, Florida promptly enacted a new death
> penalty procedure, under which Dobbert was tried, convicted and sentenced to
> death.  Dobbert argued that there was no death penalty in effect in Florida at the
> time of his criminal conduct, because the then extant Florida statute was declared
> invalid after the time of his criminal conduct, an argument based on the *Ex Post
> Facto* Clause.  The Supreme Court readily rejected Dobbert's argument, holding in
> relevant part:
>
>> But this sophistic argument mocks the substance of the *Ex Post Facto*
>> Clause.  Whether or not the old statute would in the future, withstand
>> constitutional attack, it clearly indicated Florida's view of the severity of
>> murder and of the degree of punishment which the legislature wished to
>> impose upon murderers.  The statute was intended to provide maximum
>> deterrence, and its existence on the statute books provided fair warning as
>> to the degree of culpability to which the State ascribed to the act of murder.
>>
>> Petitioner's highly technical argument is at odds with [a statement from
>> *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct.
>> 317, 84 L.Ed. 329 (1940) ].  Here the existence of the statute served as an
>> "operative fact" to warn the petitioner of the penalty which Florida would
>> seek to impose on him if he were convicted of first-degree murder.  This was
>> sufficient compliance with the *ex post facto* provision of the United States
>> Constitution.

*Duncan*, 400 F.3d at 1307-08 (quoting *Dobbert*, 432 U.S. at 297-98) (bracketed insertion

by the quoting court).  Similarly, although Ohio's sentencing statutes at the time of Smith's

criminal acts were unconstitutional, they nevertheless gave him fair notice of the acts that

were prohibited and the degree of punishment which the Ohio legislature wished to impose

on those who committed those acts.  As the reinterpreted statute did not increase the

maximum penalty to which Smith was potentially subject, Smith cannot say that he was not

given fair warning of what was prohibited or of the potential penalties to which he would be

subject if he committed those acts.  This is particularly true because Smith received the same sentence under the reformed statute as he did under the original statute.  *See United States v. Alston-Graves*, 435 F.3d 331, 343 (D.C. Cir. 2006); *United States v. Vaughn*, 430 F.3d 518, 524-25 (2d Cir. 2005); and *United States v. Lata*, 415 F.3d 107, 112 (1st Cir. 2005).

Third, Smith' position is contradicted by *U.S. v. Booker*, 543 U.S. 220 (2005), and its progeny.  In *Booker*, the Supreme Court confronted the constitutionality of a federal sentencing statute that resembled Ohio's insofar as it required specified judicial findings of fact for upward departures from a base sentence.  The Court found that such mandatory factfinding violated the holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000)*,* and excised those portions of the statute requiring judicial factfinding before increasing a base sentence.  The Supreme Court also allowed sentencing courts to engage in factfinding in determining sentences by using the previously-mandatory sentencing factors as guidelines that should be considered in sentencing.  The Court required other federal courts to apply both parts of its holding--striking the mandatory findings on Sixth Amendment grounds and using the previously-mandatory factors as guidelines--to future cases because applying both holdings in combination best approximated the will of Congress in enacting sentencing reform.  *Id.* at 249.  Finally, the Court struck those sections of the statute requiring a relatively strict appellate review for departures from mandatory sentencing and found that the resulting statute implied appellate review under a "reasonableness" standard.  *Id.* at 259-60.

When the Ohio Supreme Court determined that Ohio's sentencing statutes violated the holding in *Blakely*, it explicitly turned to *Booker* to cure the statutes' unconstitutionality.

20

*Foster*, 109 Ohio St. 3d at 26-27, 845 N.E.2d at 495-96.  Thus, the Ohio Supreme Court excised those portions of the statutes requiring judicial factfinding using certain factors before making upward departures from a base sentence or before sentencing to consecutive sentences.  *Id.*, 109 Ohio St. 3d at 28-30, 845 N.E.2d at 497-98.  It also instructed Ohio courts to use the factors enumerated in the statutes as guidelines in making sentencing determinations.  *Id.*, 109 Ohio St. 3d at 30, 845 N.E.2d at 498.  Sentencing courts were thus free to sentence defendants anywhere within the sentencing ranges set by the Ohio legislature for various crimes or to consecutive sentences, using the previously-mandatory factors as guidelines to determine where in the range a defendant should be sentenced.  The resulting statutes, according to the Ohio Supreme Court, best approximated the will of the legislature in passing the sentencing statutes while doing away with the statutes' unconstitutionality.  *Id.*

A number of federal defendants have alleged that the federal sentencing statutes reshaped by *Booker* violate due process because they subject defendants to *ex post facto* laws.  Those challenges have been universally rejected.  *See United States v. Scroggins*, 411 F.3d 572, 575-78 (5th Cir. 2005); *United States v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005); *United States v. Dupas*, 417 F.3d 1064, 1068-69 (9th Cir. 2005); *United States v. Rines*, 419 F.3d 1104, 1106 (10th Cir. 2006); *Duncan*, 400 F.3d at 1306-08; and *Alston-Graves*, 435 F.3d at 343.  Smith makes no argument that distinguishes in any relevant respect Ohio's revised sentencing statutes from the revised federal sentencing statutes upheld by the appellate courts.  Smith' second ground for relief, therefore, is without merit and should be dismissed.

21

III.  Conclusion

For the foregoing reasons, the magistrate judge recommends that Smith's petition

be dismissed.


                                                    /s/ Nancy A. Vecchiarelli
Date:  October 14, 2008                       United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**